IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| AMANDA BLACK,<br><br>               Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | CV 25-22-M-KLD<br><br><br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.

## I.    **Procedural Background**

Plaintiff protectively filed an application for Title XVI benefits on July 25, 2022, alleging disability beginning on July 25, 2022 (Tr. 220-225).[1]

---

[1] Citations to the certified administrative record filed by the Commissioner (Doc. 7) are designated as "Tr." and refer to the Bates-stamped page numbers assigned by the Social Security Administration rather than the page numbers assigned by the Court's electronic docketing system.

Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Tr. 71-78, 80-88, 15-25). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated June 24, 2024, the agency's final decision for purposes of judicial review. (Tr. 1-6). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B.**    **Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.    **Discussion**

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her application and alleged onset date, July 25, 2022. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disease, obesity, and major depressive disorder. (Tr. 17). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment

described in the Listing of Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. 18).

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work with several limitations including:

> [She] can never climb ladders, ropes, and scaffolding; can occasionally climb ramps and stairs; can occasionally stoop, kneel and crouch; can never crawl; can tolerate occasional exposure to vibration and extreme cold; can tolerate occasional exposure to hazards, such as unprotected heights and moving mechanical parts; can occasionally interact with the public; can frequently interact with co-workers and supervisors, but should avoid tasks requiring close coordination with coworkers; and can tolerate frequent changes in a routine work setting.

(Tr. 20). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 23). Proceeding to step five, the ALJ found based on the vocational expert's testimony that other jobs exist in significant numbers in the national economy that Plaintiff could perform, including unskilled sedentary work as a preparer, polisher, and touch up inspector. (Tr. 25).

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises two issues on appeal. First, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her subjective symptom testimony. Second, Plaintiff contends the ALJ failed to properly evaluate the opinion of her mental health counselor.

## A.   Subjective Symptom Testimony

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

This standard requires the ALJ to "show his work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the

ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony he finds not credible and linking that testimony to the particular parts of the record supporting his determination. *Brown-Hunter*, 806 F.3d at 494.

If the ALJ provides at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. *See e.g. Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (If the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless"). "There is, however, one important caveat to this rule: A lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony." *Joshua P.*, 2021 WL 4330858, at *3 (citing *Valdez v. Berryhill*, 746 F.App'x 676, 677 (9th Cir. 2018) (stating that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason").

8

Here, the ALJ found that Plaintiff met her initial burden under the two-step process because she produced evidence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (Tr. 21). Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Plaintiff argues the ALJ failed to meet this burden.

At her administrative hearing on May 29, 2024, Plaintiff testified that she suffers from constant back pain that can get worse throughout the day, and that she sometimes experiences spasms. (Tr. 42). She stated that her pain is mostly in her lower back, but sometimes her sciatic nerve flares up and she will experience pain that shoots down her legs. (Tr. 43). Plaintiff is 5' 8" tall, and at the time of the hearing weighed 330 pounds. (Tr. 38). Plaintiff thought her weight was a factor and testified that her back pain had gotten a lot worse in the last year. (Tr. 44). Plaintiff testified that she cannot stand in one spot for more than a couple of minutes at a time and can walk for about 15 minutes before needing to sit down. (Tr. 47-48). Plaintiff described having a history of depression and said that she has good days and bad days. (Tr. 45). She stated that her depression had gotten a little bit better over the last year, but gets worse when she is in pain and causes her to isolate. (Tr. 45). Plaintiff explained that on her bad days she isolates at home and spends her time sitting or lying down or just walking around. (Tr. 47). Plaintiff

testified that she is on medication for depression which helps, and while she still has some bad days approximately once every couple of months, it was mostly just her back pain that was bothering her. (Tr. 52).

In March 2023, Plaintiff completed a function report on which she indicated she was unable to return to work due to major depressive disorder, borderline personality disorder, and panic disorder. (Tr. 277). She stated that her depression makes it hard for her to plan her days, and most of the time she sits on her bed and paces back and forth because she does not have the motivation to go and do anything. (Tr. 278). Plaintiff listed fishing as a hobby, which she does once a month in the spring and summer if she feels up to it. (Tr. 281). Plaintiff wrote that her disorders affect everything she does on a daily basis, she can walk half a block before needing to stop and rest for ten minutes, and she has frequent panic attacks that make it hard to go and do things. (Tr. 282-83).

The ALJ summarized Plaintiff's subjective symptom testimony but discredited her statements as to the severity and limiting effects of her symptoms on the ground that her testimony was not consistent with the medical evidence. (Tr. 21). Specifically, the ALJ found that Plaintiff's statements were "inconsistent with" the medical record "because the treatment notes do not show the serious symptoms and dysfunction that would be expected were [Plaintiff] as limited as alleged." (Tr. 22). The ALJ acknowledged elsewhere in his decision that medical

10

imaging records showed "clear lumbar degenerative disc disease" and documented the "progression of [Plaintiff's] degenerative musculoskeletal conditions." (Tr. 22, 23). In nevertheless finding that Plaintiff's testimony was not consistent with the medical record, the ALJ cited routine physical examination findings from several medical appointments between November 2019 and June 2023 reflecting that Plaintiff's gait was often described as "normal," "stable," or "unremarkable." (Tr. 22, citing Tr. 446, 449, 465, 525, 551, 587, 595, 606, 624, 634, 749, 756). The ALJ acknowledged that Plaintiff sometimes presented with a "slow [gait] with a wide stance" or a "slow antalgic" gait but observed that she did not use a mobility aid. (Tr. 22, citing Tr. 457, 467, 471, 473, 728, 732). The ALJ additionally pointed to negative straight leg raise test results from a handful of medical appointments between October 2016 and February 2024. (Tr. 22, citing Tr. 387, 398, 499, 504, 839).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Although a finding that a claimant's subjective complaints are *inconsistent with* objective medical evidence can, standing alone, satisfy the clear and convincing standard for rejecting subjective symptom testimony, "an ALJ cannot reject such testimony solely because the

degree of pain is not *supported by* the objective medical evidence." *Harriss v. Commissioner*, 2025 WL 1769713, at *12 (E.D. Cal. June 26, 2025) (italics added) (citing *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)). In other words, while "a lack of support from medical evidence is a factor the ALJ may consider in his analysis of a plaintiff's testimony, [] it cannot be the sole basis for rejecting it." *James S. v. Kijakazi*, 2023 WL 2536717, at *5 n. 5 (S.D. Cal. March 15, 2023); *see also Rodgriguez v. Comm'r of Soc. Sec. Admin.,* 2024 WL 4487186, at 12 (D. Ariz. Aug. 27, 2024) ("[P]recision is imperative when reviewing an ALJ's decision comparing symptom testimony with the medical evidence, because a lack of corroboration is different from contradiction.").

Here, the ALJ's finding that Plaintiff's testimony was "inconsistent with" the medical evidence is problematic for a few reasons. To begin with, the ALJ did not identify what testimony he found not credible and did not link that testimony to the particular treatment notes cited in his decision. (Tr. 22). Assuming—as argued by the Commissioner (Doc. 11 at 3)—that the ALJ meant to discredit Plaintiff's testimony that she cannot walk for more than 15 minutes or half a block without resting, the fact that Plaintiff often presented with a normal gait in an examination room is not inconsistent with her alleged need to take breaks after walking for several minutes. Additionally, many of the treatment notes cited by the ALJ predate the relevant period (Tr. 446, 449, 465, 587, 606, 624, 634) and are from

12

medical visits that were unrelated to Plaintiff's orthopedic impairments and back pain. For example, the ALJ cited records from visits to address Plaintiff's mental health impairments (Tr. 446, 449, 465, 749) and unrelated physical complaints including urinary symptoms, nausea and vomiting, sinus headache, and hearing difficulties (Tr. 525, 587, 605, 634, 718, 749). Because these medical providers were not treating Plaintiff's degenerative disc disease, the fact that their records do not include more detailed findings related to Plaintiff's back pain and related physical limitations is not surprising. *See Jajo v. Astrue*, 273 F.App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports. However, the purpose of those visits was not to assess [the claimant's] mental health and thus any lack of corroboration is not surprising.").

The Court also notes that, of the five straight leg test results cited by the ALJ, only two were from the relevant period after Plaintiff's July 2022 alleged onset date. (Tr. 499, 839). Again, the ALJ did not identify any specific inconsistencies between this evidence and Plaintiff's statements as to the extent of her back pain and mobility limitations. The ALJ's general statement that Plaintiff's testimony as a whole was "inconsistent with" the medical evidence, without any "specific findings in support of that conclusion, is insufficient." *Treichler v. Commissioner*, 775 F.3d 1090, 1103 (9th Cir. 2014).

To the extent the ALJ found that Plaintiff's testimony as to the severity of her back pain and walking limitations was not fully "supported by" objective medical evidence documenting a normal gait, the lack of corroborating evidence is not, standing alone, a sufficient basis for rejecting subjective symptom testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining that "lack of medical evidence cannot form the sole basis for discounting pain testimony"). The Commissioner concedes that the ALJ did not identify any other basis for rejecting Plaintiff's testimony as to the severity of her physical impairments and associated limitations. (Doc. 11 at 4 n. 1).

In discussing the prior administrative findings, however, the ALJ made two statements that can arguably be read as asserting additional reasons for discounting Plaintiff's testimony—neither of which is supported by substantial evidence. First, the ALJ found that "[m]ore restrictive limitations beyond those in the residual functional capacity are not supported by the evidence of record which shows fairly high daily activities levels (working out, walking dog, going to the gym)." (Tr. 23). An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also*, *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support

14

an adverse credibility determination."). Notably, the ALJ did not support his characterization of Plaintiff's daily activities with any citations to the record. The Commissioner does not address this aspect of the ALJ's decision in the briefing, and it is not this Court's role to search through the administrative record to find evidence that supports the ALJ's decision. *See e.g. Iserloth v. Berryhill*, 2017 WL 7036657, at *6 (D. Mont. Oct. 2, 2017).

As pointed out by Plaintiff, any evidence that she was "going to the gym" and "working out" predates the relevant period beginning with her alleged onset date in July 2022. For example, in January 2017 and July 2021, Plaintiff reported going to the gym several times a week (Tr. 393, 451, 638). The same does not appear to be true for the period after July 2022. For example, in the fall of 2022 Plaintiff reported that "[t]o lose weight, she was going to get a gym membership" (Tr. 495), and in January 2023 Plaintiff's primary care provider noted that she had used the gym in the past and was joining a fitness center. (Tr. 529, 534). While Plaintiff's primary care provider routinely encouraged her to continue making an effort to maintain a healthy lifestyle by "going to the gym and eating healthy" (Tr. 757, 854), the ALJ did not cite evidence demonstrating that Plaintiff was "going to the gym" and "working out" during the relevant period. At an appointment in July 2023, Plaintiff stated that she "walks her dog" but there is no indication how far she walked or how frequently. (Tr. 769). On this record, the ALJ's reliance on

15

Plaintiff's daily activities as a basis for discounting her symptom testimony is not supported by substantial evidence.

Second, the ALJ focused on what he characterized as Plaintiff's conservative course of treatment. (Tr. 23). An ALJ may rely on evidence of conservative treatment when discounting a claimant's testimony. *See e.g. Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). However, an ALJ cannot reject a claimant's symptom testimony on the ground that she received only conservative treatment when "the record does not reflect that more aggressive treatment options [were] appropriate or available." *Lapierre-Gutt v. Astrue*, 382 F.App'x 662, 664 (9th Cir. 2010) (unpublished); *see also Christin D. v. Kijakazi*, 2024 WL 4132436, *5 (D. Nev. Sept. 10, 2024) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available.") (citing *Lapierre-Gutt*, 382 F. App'x at 664)).

Here, the ALJ arguably discounted Plaintiff's symptom testimony because she had followed "a conservative course of treatment (choosing not to pursue pain medication for a time due a family history of abuse, attending physical therapy, and a lack of surgical intervention)." (Tr. 23). But again, the ALJ did not support this statement with any citations to the record. Plaintiff points to evidence that her

16

treatment regimen included physical therapy and pain management, including prescription pain medication and injections, and her doctor stated that surgery was not indicated. (*See e.g.* Tr. 487-505, 506-515, 557, 722-74, 817-18, 833). The ALJ did not cite evidence suggesting that Plaintiff opted for conservative treatment instead of more aggressive treatment, or that more aggressive treatment was recommended or available. Particularly without any discussion, the ALJ's characterization of Plaintiff's treatment as conservative was not a specific, clear and convincing reason to reject her testimony.

Finally, turning to Plaintiff's testimony concerning her mental impairments, the ALJ wrote: "At the hearing, the claimant testified that her mental health had improved over the past year and that it was not her primary concern." (Tr. 22). Consistent with testimony summarized by the ALJ, Plaintiff testified that she has good days and bad days, and while her depression has "gotten a little bit better," it gets worse when she is in pain and causes her to isolate. (Tr. 45). Plaintiff testified that she is on medication for depression which helps, and while she still has some bad days approximately once every couple of months, it was mostly just her back pain that was bothering her. (Tr. 52). The ALJ did not identify what statements by Plaintiff he found not credible based on this testimony. (Tr. 22). Nevertheless, to the extent Plaintiff claimed in her function report that she cannot work due to her mental impairments, her hearing testimony undercuts this

17

assertion. (Tr. 277-78). While this apparent inconsistency provides a basis for discounting Plaintiff's assertion that she cannot work due to the severity of her mental health impairments, it does not provide a basis for discounting her testimony as to the severity of her back pain and limitations. *See e.g. Darren W. v. Saul*, 2021 WL 1181177, at \*10 (D. Or. Mar. 29, 2021) (finding that "[t]he ALJ offered specific, clear and convincing reasons for rejecting Plaintiff's physical symptom testimony but not Plaintiff's mental symptom testimony"); *Garrison v. Colvin*, 759 F.3d 995, 1015-17 (9th Cir. 2014) (noting that the claimant "testified about her physical and mental health" and therefore "separately address[ing] the ALJ's grounds for discrediting each part of [the claimant's] testimony").

For the reasons discussed above, the Court finds that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective testimony about the severity of her physical impairments and symptoms.

### B.   Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the opinion of her mental health therapist, Licensed Clinical Social Worker (LCSW) Leslie Brown. Under the amended regulations that apply to Plaintiff's claim, the ALJ must consider all medical opinions and prior administrative medical findings and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a). The amended regulations require the ALJ to consider a social worker's opinion using the same standard that applies to other medical sources. *See e.g. J.R. v. Dudek*, 2025 WL 2505678, at *5 (N.D. Cal. Sept. 2, 2025) (citing *C.D. Kijakazi*, 2024 WL 4021 at *5 n. 7 (N.D. Cal. Jan. 3, 2024)).

On May 3, 2024, LCSW Brown completed a Mental Impairment Questionnaire stating that she had seen Plaintiff approximately once a week between December 2022 and December 2023. (Tr. 866). LCSW Brown listed diagnoses of major depressive disorder and borderline personality disorder and identified a number of mental limitations including: (1) moderate limitations in understanding information, interacting with others, concentrating, maintaining pace, adapting in the workplace, and managing oneself in the workplace; and (2) marked limitations in persisting. (Tr. 866, 870).

The ALJ found LCSW Brown's opinion unpersuasive because it was "not particularly well supported with no explanation for the moderate or marked limitations." (Tr. 23). Supportability means the extent to which a medical source supported the medical opinion by explaining the "relevant…objective medical

evidence." 20 C.F.R. § 416.920c(c)(1). LCSW Brown did not provide any explanation for the mental limitations she identified by check-mark on the Mental Impairment Questionnaire form. Although LCSW Brown identified moderate and marked limitations in one section of the form, she indicated in a different section that Plaintiff's "mental abilities and aptitudes" for unskilled work were, at worst, "limited but satisfactory." (Tr. 868-69). LCSW Brown did not explain the apparent discrepancy between Plaintiff's satisfactory abilities and her moderate to marked limitations. On this record, the ALJ reasonably found that LCSW Brown's opinion unpersuasive because it was not well supported.

The ALJ also found that LCSW Brown's opinion was not consistent with other evidence in the record. Consistency means the extent to which a medical opinion is "consistent…with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920(c)(2). The ALJ noted that Plaintiff spends time with friends and enjoys babysitting her friend's child (Tr. 779, 784) and highlighted Plaintiff's testimony that medication helped her mental impairments and it had "mostly just been [her] back pain that's bothering [her]" (Tr. 52). The ALJ reasonably found that LCSW Brown's opinion unpersuasive because it was not entirely consistent with Plaintiff's activities and her own testimony about the improvement in her mental health.

### C.   Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined that the ALJ did not provide adequate reasons for discrediting Plaintiff's testimony as to the severity and limiting effects of her physical impairments. This error may have affected the ALJ's hypothetical, and in turn, the undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

### D.   Remand

Plaintiff requests the Court remand this matter for an award of benefits. (Doc. 9 at 11). The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is

clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. The ALJ failed to provide specific, clearing and convincing reasons for discounting Plaintiff's testimony as to the severity and limiting effects of her physical impairments. On this record, the Court cannot conclude the ALJ's error was harmless. *See Brown-Hunter*, 806 F.3d at 492 (noting that "[i]f the ALJ fails to specify [the] reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully" and "such error will usually not be harmless"). Accordingly, remand for further administrative proceedings is the proper remedy. On remand, the ALJ should reevaluate Plaintiff's testimony as to the severity and limiting effects of her physical impairments and consider whether additional limitations are properly incorporated into the residual functional capacity assessment.

## IV.   **Conclusion**

For the reasons discussed above,

IT IS ORDERED that the Commissioner's decision is REVERSED and this

//

//

22

matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion.

DATED this 12th day of March, 2026.

_____
Kathleen L. DeSoto
United States Magistrate Judge